UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **CARRIE RUSBULDT**, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**MONDELEZ GLOBAL LLC; MONDELEZ GLOBAL LLC ADMINISTRATIVE COMMITTEE;** and **JOHN AND JANE DOES 1–20**, in their capacities as members of the Mondelez Global LLC Administrative Committee,<br><br>Defendants. | Civil Action No.: ______________<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Carrie Rusbuldt ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Mondelez Global LLC ("Mondelez"), the Mondelez Global LLC Administrative Committee (the "Administrative Committee"), and the individual members of that Committee during the relevant period ("John and Jane Does 1–20") (collectively, "Defendants"), based on personal knowledge with respect to herself and on information and belief derived from, among other things, investigation of counsel, review of participant-facing benefits materials and Plaintiff's payroll record, efforts to obtain governing Plan documents, and review of public records as to all other matters:

## NATURE OF THE ACTION

1. It is both unfair and unlawful for an employer to require employees to pay more for health coverage because they use tobacco unless the employer complies with ERISA's wellness-program requirements. Mondelez did exactly that. Under the Mondelez Global LLC Group Benefits Plan (the "Plan"), employees classified as tobacco users were charged an additional $100

per month for medical coverage. The 2020 New Hire Guide states that the surcharge applies to employees who use tobacco products "of any kind," including e-cigarettes, "no matter how frequent the use." *See* Ex. A. Participants who did not use tobacco avoided the additional charge for the same medical coverage. ERISA permits that health-based premium differential only if the Plan satisfies every condition of the wellness-program exception, including a compliant reasonable alternative standard, the full reward, and the required notice. *See* 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(j)(3)(C)–(E).

2. To impose a lawful tobacco surcharge, a plan must make available a compliant wellness program that gives every affected participant a meaningful way to obtain the same reward available to non-tobacco users. The requirements are set forth in ERISA and the regulations adopted by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments"). The Departments explained that these criteria must be satisfied before a plan may rely on the statutory exception to ERISA's general prohibition against health-status-based premium discrimination.

3. ERISA's regulatory requirements are intended to ensure that wellness programs promote health rather than operate as a "subterfuge for discriminating based on a health factor." A compliant outcome-based program must provide a reasonable alternative standard through which participants can obtain the same, full reward, and it must provide the prescribed notice in all Plan materials describing the program's terms. *See* 29 C.F.R. § 2590.702(f)(4). Mondelez's materials describe the tobacco surcharge but do not disclose the full set of rights ERISA requires.

4. Mondelez's 2020 New Hire Guide illustrates the problem. It tells employees that they will pay a $100 monthly surcharge if they use tobacco and must certify their tobacco-use status during enrollment. It warns that Plan penalties, termination of coverage, and employment

discipline may apply if an employee does not report that status truthfully. The Guide then states: "If you're ready to kick the habit and avoid the surcharge, learn more about the free Tobacco Cessation Program offered through the Fuel4Life Wellbeing Program." 2020 New Hire Guide at 16. But the Guide does not say that every tobacco user may obtain a reasonable alternative or waiver, does not state that recommendations from a participant's personal physician will be accommodated, and does not explain that completion of an alternative entitles the participant to the same, full reward for the applicable Plan year.

5. The 2021 Annual Enrollment Guide repeats the same defect in even starker form. Its medical-coverage section tells employees that tobacco use results in "an additional $100 monthly surcharge." *See* Ex. B, 2021 Annual Enrollment Guide at 6. Yet that Guide does not identify a reasonable alternative standard or waiver for the surcharge, does not explain how a participant may request an individualized alternative, and does not state that recommendations from a participant's personal physician will be accommodated. A separate statement that more detailed materials may exist online does not provide the notice that must appear in every Plan material describing the terms of an outcome-based wellness program.

6. The materials also fail to explain how a participant who completes the cessation alternative during a Plan year receives the "full reward." The 2020 Guide says that completing the Tobacco Cessation Program allows an employee to "avoid the surcharge," but it does not state that surcharges already deducted for that Plan year will be returned or credited. It provides no retroactive-reimbursement mechanism at all. Upon information and belief, Mondelez administered the program so that participants who satisfied the alternative after surcharges had already been deducted did not receive the same full annual value provided to participants who satisfied the initial tobacco-free standard.

7. That omission matters because the Departments expressly addressed this point. A participant may take time to request, establish, and satisfy a reasonable alternative, but the "same, full reward" must still be provided for the applicable Plan year. For a premium discount, that means the Plan must account for the period before the participant completed the alternative, whether by a refund, credit, or another method that gives the participant the full value of the reward. Final Regulations, 78 Fed. Reg. 33158, 33163 (June 3, 2013). A program that merely stops future deductions leaves the participant with less than the full reward.

8. The available documents are particularly important because Mondelez itself tells employees that the participant-facing guides provide only basic information and that the governing Summary Plan Descriptions ("SPDs") are available through MyBenefits Online or in paper form from the Mondelez International Benefits Center. 2020 New Hire Guide at 19; 2021 Annual Enrollment Guide at 12.

9. The financial consequence was concrete. Plaintiff's pay statement separately lists a $25 deduction labeled "*Ben Sur Tobacco," alongside her pre-tax medical, dental, vision, and 401(k) deductions. The deduction is direct evidence that Mondelez collected an additional amount from Plaintiff because of tobacco status as part of the payroll mechanics used to fund employee benefits.

10. Mondelez cannot qualify for the statutory exception merely because it offered a cessation program. The exception requires compliance with all applicable criteria. The Plan had to make the full reward available to all similarly situated participants and had to provide the prescribed reasonable-alternative notice in every material describing the surcharge. A cessation program that is mentioned without the required rights and without a mechanism ensuring the full reward does not satisfy those conditions.

11. The additional contributions also benefited Mondelez financially. The 2021 Annual Enrollment Guide states that the Company pays the majority of the cost of employee medical coverage. The Plan has likewise described it as a self-funded employee welfare benefit plan. See *C.B. v. BlueCross BlueShield of Ill.*, No. 23-cv-01206, 2025 U.S. Dist. LEXIS 28316, at *2 (N.D. Ill. Feb. 18, 2025). Each additional dollar collected from an employee toward self-funded coverage correspondingly reduced the amount of employer money otherwise needed to finance Plan costs or provided Mondelez the possession and use of participant-derived funds pending their application to Plan expenses.

12. Participant amounts withheld from wages for contribution to an ERISA welfare plan become Plan assets as of the earliest date on which they can reasonably be segregated from the employer's general assets. 29 C.F.R. § 2510.3-102(a)(1). To the extent Mondelez retained or used tobacco-surcharge amounts after they became Plan assets or caused those assets to be used to reduce corporate funding obligations, its conduct implicated fiduciary duties separate from the initial settlor decision to establish contribution rates.

13. Plaintiff paid the tobacco surcharge while participating in Mondelez-sponsored medical coverage. Documents show a $25 tobacco surcharge deduction. Plaintiff brings this action individually and on behalf of similarly situated participants, and, as to the claim under ERISA § 502(a)(2), on behalf of the Plan. She seeks appropriate equitable relief for amounts collected under a health-based differential that Defendants cannot justify under ERISA, together with restoration and disgorgement of profits or other financial benefits obtained through fiduciary breaches.

## PARTIES

14. Plaintiff Carrie Rusbuldt was an employee of Mondelez. During her employment, she participated in Mondelez-sponsored medical coverage under the Plan and was charged an additional amount because Mondelez treated her as a tobacco user. Documents issued by Mondelez list a $25 deduction labeled "*Ben Sur Tobacco." The precise dates and total amount of Plaintiff's tobacco surcharge deductions are contained in Defendants' payroll and Plan records.

15. Plaintiff was a participant in the Plan when the challenged amounts were collected and has a colorable claim to relief arising from her participation in the Plan. She therefore is a "participant" within the meaning of 29 U.S.C. § 1002(7) for purposes of the claims asserted here.

16. Defendant Mondelez is a Delaware limited liability company headquartered in Chicago, Illinois. Mondelez sponsors the Plan.

17. Defendant Administrative Committee is, upon information and belief, the committee responsible for administration and fiduciary oversight of the Plan. Plaintiff alleges on information and belief that the Administrative Committee exercised discretionary authority over Plan administration, including participant contributions, wellness program administration, and the Plan communications through which the tobacco surcharge was imposed and explained.

18. The identities of the individual members of the Administrative Committee during the relevant period are presently unknown to Plaintiff. Plaintiff therefore names them as John and Jane Does 1–20 and will amend this Complaint to identify and substitute the appropriate individuals when their identities and responsibilities are learned through discovery or production of the governing Plan documents.

19. At all relevant times, Mondelez sponsored the Plan and, upon information and belief, self-funded its medical benefits. Mondelez and the Administrative Committee acted as fiduciaries to the extent they exercised discretionary authority over Plan administration or

authority or control over Plan assets. The Plan is an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1) and (3).

## JURISDICTION AND VENUE

20. The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because this action seeks relief under ERISA, a federal statute.

21. This Court has personal jurisdiction over Defendants because Mondelez is headquartered in Chicago, Illinois, sponsors the Plan from Illinois, and, upon information and belief, administers the Plan and the challenged tobacco-based premium differential in substantial part from Illinois. The Administrative Committee likewise operates for the Plan at or through Mondelez's headquarters and corporate benefits structure.

22. Venue is proper in the Northern District of Illinois under 29 U.S.C. § 1132(e)(2), which permits an ERISA action to be brought where the Plan is administered, where the alleged breach took place, or where a defendant resides or may be found. Mondelez maintains its headquarters in Chicago, and the available pay statement uses that address for Mondelez Global LLC. The acts and omissions giving rise to Plaintiff's claims, including administration of the tobacco surcharge, oversight of participant contributions, and fiduciary decision-making, occurred in substantial part in this District. Venue is therefore proper in the Eastern Division.

## FACTUAL BACKGROUND

### I. DEFENDANTS' TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE

#### A. Statutory and Regulatory Requirements.

23. ERISA prohibits a group health plan or health insurance issuer from discriminating in premiums or contributions based on a health-status-related factor, including tobacco use. A plan "may not require any individual (as a condition of enrollment or continued enrollment under the

plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1); *see also* 42 U.S.C. § 300gg-4(b)(1).

24. The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to programs of health promotion and disease prevention" (29 U.S.C. § 1182(b)(2)(B) (emphases added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

25. Congress authorized the Secretary of Labor to prescribe regulations necessary or appropriate to carry out ERISA Title I, including its group-health-plan requirements. See 29 U.S.C. §§ 1135, 1191c. ERISA also incorporates the applicable Public Health Service Act requirements, including PHSA § 2705, through 29 U.S.C. § 1185d(a)(1). The statutory and regulatory framework therefore governs the Plan's tobacco-based premium differential. *See* 42 U.S.C. § 300gg-4; 29 C.F.R. § 2590.702.

26. Exercising that delegated authority, the Departments issued regulations in 2006 outlining the criteria for the wellness-program exception. *See* Final Regulations, 33158–59. Following the Affordable Care Act's amendments, the Departments proposed amended regulations in November 2012 and adopted the Final Regulations on June 3, 2013. Those regulations apply to plan years beginning on or after January 1, 2014. *Id.* at 33158–59. They governed the charges challenged by Plaintiff.

27. The Final Regulations specify the requirements that a health-contingent wellness program must satisfy to qualify for the statutory exception. The Departments explained that the

rules establish criteria for an affirmative defense to a claim of health-status discrimination. Final Regulations, 33163. Once a participant alleges a discriminatory surcharge and facts showing the program's deficiencies, the employer invoking the exception must establish that its program satisfies the applicable statutory and regulatory conditions.

28. The criteria in the Final Regulations are not optional. They serve as the only lawful pathway for plans to impose health-based premium differentials by ensuring that wellness programs do not arbitrarily penalize participants and they prevent employers from using surcharges as a revenue-generating mechanism rather than a genuine tool for health promotion. If a wellness program fails to meet even one of these stringent requirements, the program is noncompliant and the employer cannot benefit from the statutory carve-out. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section only if all of the [] requirements are satisfied.").

29. To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: the applicable limit is generally 30% of the total cost of coverage, increased to 50% to the extent attributable to tobacco-prevention or reduction programs. Employee-only coverage is the baseline unless a class of dependents may participate, in which event the applicable enrolled coverage cost is used. 29 C.F.R. § 2590.702(f)(4)(ii), (5). Plaintiff does not assert a separate percentage-cap violation.

(c) Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii).

(d) Uniform availability and reasonable alternative standards: "The full reward under the outcome-based wellness program must be available to all similarly situated individuals." § 2590.702(f)(4)(iv).

(e) Notice: all materials describing the program's terms must disclose the availability of a reasonable alternative or applicable waiver, include contact information for obtaining the alternative, and state that personal-physician recommendations will be accommodated. The same requirement applies to disclosures that an individual failed the initial outcome-based standard. 29 C.F.R. § 2590.702(f)(4)(v).

30. The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute's protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

31. Regarding the first criterion, "the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." Final Regulations, 33162. The once-per-

year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

32. A central requirement is that the full reward remain available to all similarly situated individuals who satisfy a reasonable alternative during the applicable plan year. 29 C.F.R. § 2590.702(f)(4)(iv). Although a plan has flexibility concerning how to deliver the portion of the reward attributable to earlier months, it must deliver the full value rather than keep those amounts permanently. The Departments explained:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year***. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine how to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) ***as long as . . . the individual receives the full amount of the reward***.

Final Regulations, 33163 (emphases added).

33. The regulations also distinguish between making an alternative available and merely telling a participant to locate one without assistance. Example 8 describes a program that imposes a tobacco surcharge but tells the participant to find a cessation program, pay for it, and submit a certificate of completion. That program fails because the plan has not furnished a compliant alternative. *See* 29 C.F.R. § 2590.702(f)(4)(vi), Example 8; Final Regulations, 33180. Mondelez identifies no-cost cessation resources, but their availability does not excuse the independent full reward and notice violations alleged here.

34. For health-contingent wellness programs, the Final Regulations require the notice be disclosed "in ***all plan materials*** describing the terms of" the program. 42 U.S.C. § 300gg-4(j)(3)(E); 45 C.F.R. § 146.121(f)(4)(v) (emphasis added). Further, the Final Regulations establish

that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents . . . if compliance with the wellness program affects premiums . . . under the terms of the plan." Final Regulations, 33166. Plans that charge participants more based on tobacco use and fail to provide the prescribed notice cannot invoke the wellness program exception.

## II. DEFENDANTS CANNOT INVOKE ERISA'S WELLNESS-PROGRAM EXCEPTION

35. Mondelez's tobacco surcharge created a premium differential based on a health factor. The 2020 New Hire Guide states that an employee who uses tobacco products must pay an additional $100 per month for medical coverage. It defines the standard broadly to include tobacco products "of any kind," including e-cigarettes or anything that reasonably resembles tobacco products, regardless of frequency of use. *See* Ex. A, 2020 New Hire Guide at 16.

36. The same Guide requires employees enrolling in medical coverage to certify tobacco-use status and warns that Plan-related penalties, termination of coverage, and employment discipline may result from an inaccurate certification. *Id.* An employee who does not satisfy the tobacco-free standard therefore pays more for the same Plan medical coverage solely because of a health-status-related factor.

37. ERISA permits that differential only if Defendants satisfy the requirements governing outcome-based wellness programs. Among other things, the Plan must make a compliant reasonable alternative standard available, provide the same full reward to participants who satisfy it, and include the prescribed notice in every Plan material describing the surcharge. 29 C.F.R. § 2590.702(f)(4)(iii)–(v).

38. The 2020 New Hire Guide identifies only one path for a tobacco user: it tells employees who are "ready to kick the habit and avoid the surcharge" to learn more about the free Tobacco Cessation Program offered through Fuel4Life. *Id*. The Guide does not disclose a waiver, does not tell participants that an individualized reasonable alternative must be available to every affected individual, and does not state that recommendations from the participant's personal physician will be accommodated.

39. The 2021 Annual Enrollment Guide is even less informative. It repeats that tobacco users "pay more for medical coverage" through "an additional $100 monthly surcharge," but it does not identify any tobacco-cessation alternative in the surcharge description, any waiver, any process for requesting an individualized standard, or any personal-physician accommodation. Ex. B, 2021 Annual Enrollment Guide at 6.

40. Those omissions independently defeat the wellness program exception. A participant should not have to leave the material describing the charge and search a general benefits portal for a statutory right the Plan is required to disclose in all materials describing the program's terms. Nor can a general contact list for the Fuel4Life vendor cure the failure to tell participants that a reasonable alternative or waiver exists and that physician recommendations will be accommodated.

41. The available materials also do not make the full reward available on their face. They do not say that a participant who begins a Plan year subject to the surcharge and later completes the cessation program will receive reimbursement or credit for surcharges already deducted. They say only that a participant can "avoid the surcharge." Upon information and belief, Defendants provided only prospective relief, or otherwise failed to restore the full current-year value of the reward, to participants who satisfied the alternative after deductions had begun.

42. That administration is inconsistent with the Departments' example. If a participant satisfies a reasonable alternative on April 1, the Plan must provide the premium discount for January, February, and March as well. Final Regulations, 33163. Defendants could choose the mechanics of providing the retroactive portion, but they could not retain the earlier surcharge and still call the resulting partial relief the "full reward."

43. The 2020 Guide's coercive certification structure underscores why the required disclosures matter. Mondelez expressly warned employees that failure to report tobacco use truthfully could trigger Plan penalties, loss of coverage, and employment discipline. When an employer attaches those consequences to a tobacco-status certification, ERISA requires equally clear disclosure of the alternative route through which an employee may obtain the same reward.

44. The 2020 Guide directs participants to MyBenefits Online and the Benefits Center for broader benefits questions and lists Virgin Pulse as the Fuel4Life vendor. Those general resources do not satisfy § 2590.702(f)(4)(v). The regulation requires notice of the reasonable alternative or waiver, contact information for obtaining it, and the physician-accommodation statement in the Plan materials that describe the outcome-based program.

45. Plaintiff was actually charged the surcharge. Her pay statements separately list a $25 "*Ben Sur Tobacco" deduction. That concrete payroll deduction demonstrates injury and ties the challenged Plan terms to the amounts taken from Plaintiff's wages. Because the available materials did not provide the required notice or assure the same, full reward, Defendants cannot carry their burden to establish the wellness-program exception on the present record.

## III. DEFENDANTS' SELF-DEALING AND PROFIT FROM THE TOBACCO SURCHARGE

46. Mondelez and the Administrative Committee exercised discretionary authority over Plan administration and participant contributions. The Guides direct employees to Mondelez's

benefits platform and Benefits Center to enroll, certify tobacco-use status, and manage medical coverage. Upon information and belief, the Administrative Committee was responsible for or exercised authority over the Plan rules, enrollment systems, communications, and payroll administration used to impose the tobacco surcharge.

47. The Plan's funding structure makes the economic effect of the surcharge direct. The 2021 Annual Enrollment Guide states that the Company "will continue to pay the majority of the cost for employee medical coverage." 2021 Annual Enrollment Guide at 4. The Plan is self-funded and the cost of coverage was therefore financed through a combination of employer funding and participant contributions.

48. The relationship is straightforward. When Mondelez required a participant to pay an additional $100 per month because of tobacco status, that participant supplied additional money toward employer-sponsored medical coverage. In a self-funded plan, those participant dollars reduced, dollar for dollar or otherwise correspondingly, the amount of corporate funds Mondelez otherwise needed to contribute to finance claims and administrative expenses.

49. Plaintiff's pay statements confirm that the surcharge was implemented through payroll. It separately identifies "*Pre-Tax Medical" and "*Ben Sur Tobacco" deductions. Upon information and belief, Defendants determined or approved the amount of the surcharge, caused it to be withheld from employee wages, and controlled the accounts and funding mechanisms through which those employee contributions were held and applied to Plan expenses.

50. Participant contributions withheld from wages for contribution to a welfare plan become Plan assets no later than the earliest date they can reasonably be segregated from the employer's general assets. 29 C.F.R. § 2510.3-102(a)(1), (c). Once the tobacco-surcharge amounts

withheld from participant wages became Plan assets, fiduciary duties attached to their possession and use.

51. Upon information and belief, Mondelez retained participant medical contributions within its general-asset funding structure and used those contributions to finance Plan benefits. To the extent tobacco-surcharge proceeds were used to pay Plan costs that Mondelez otherwise would have paid from corporate assets, Mondelez obtained an avoided expenditure and retained the corresponding corporate cash for its own use. To the extent participant contributions remained in employer-controlled accounts after becoming Plan assets, Mondelez also obtained the possession, use, and time value of those assets.

52. Those financial benefits arise from fiduciary conduct independent of the settlor decision to establish contribution levels. Plaintiff challenges the administration of the surcharge, the handling and use of participant contributions after withholding, the failure to provide participants the notices required to invoke statutory alternatives, and the failure to monitor the program and its payroll mechanics for compliance with ERISA.

53. A fiduciary's use of the Plan's mechanics and participant-derived Plan assets to generate a profit or other financial benefit for itself can constitute an independent harm to the Plan even if the Plan ultimately had sufficient assets to pay benefits. ERISA § 409 separately requires a breaching fiduciary to restore profits made through the use of Plan assets. 29 U.S.C. § 1109(a). The injury therefore is not limited to a strict balance-sheet loss to the Plan.

54. The precise mechanics and amount of Defendants' gain are within their possession. Defendants control the enrollment records, tobacco-status certifications, payroll records, contribution records, funding records, claims and administrative-expense information, and records identifying where participant contributions were deposited and how they were applied. Those

records will permit an accounting of the amounts collected and the profits, float, avoided expenditures, or other financial benefits generated by the challenged practices.

## CLASS ACTION ALLEGATIONS

55. Plaintiff brings this action individually and on behalf of similarly situated individuals under Federal Rule of Civil Procedure 23(a) and (b)(1). Plaintiff also brings the claim under ERISA § 502(a)(2) in a representative capacity on behalf of the Plan.

56. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> **Tobacco Surcharge Class**
>
> All individuals residing in the United States who, during the applicable limitations period, paid a premium or contribution differential based on tobacco-use status in connection with participation in the Mondelez Global LLC Group Benefits Plan.

57. Excluded from the Class are Defendants' officers and directors, persons responsible for the challenged fiduciary conduct, the judicial officers assigned to this action and their immediate families, and any person who validly releases the claims asserted here.

58. Plaintiff reserves the right to modify or amend the proposed Class definition before the Court determines whether certification is appropriate.

59. **Numerosity**. This action is appropriately suited for class treatment. Mondelez's tobacco surcharge was described in standardized benefits materials for U.S. salaried and non-union hourly employees and applied through a centralized enrollment and payroll system. Mondelez International has publicly reported approximately 12,000 U.S. employees as of year-end 2025. Plaintiff therefore alleges on information and belief that the Class contains hundreds or thousands of participants, making joinder impracticable. Class membership and surcharge amounts are ascertainable from Defendants' records.

60. **Commonality**. This action involves questions of law and fact common to the Class, including:

a. whether Mondelez's tobacco surcharge created a premium or contribution differential based on a health-status-related factor;

b. whether Defendants made a compliant reasonable alternative standard and the same, full reward available to all similarly situated participants;

c. whether participants who completed a cessation program after surcharge deductions began received reimbursement or credit sufficient to provide the full reward for the applicable Plan year;

d. whether Defendants provided the prescribed reasonable-alternative notice in all Plan materials describing the tobacco surcharge, including the required personal-physician accommodation disclosure;

e. whether Defendants breached fiduciary duties or engaged in prohibited transactions by administering the surcharge and participant contributions for Mondelez's own financial benefit;

f. whether Defendants prudently reviewed and monitored the tobacco-surcharge program, payroll deductions, participant communications, and handling of participant Plan assets;

g. the appropriate mechanisms for Class-wide restitution, equitable surcharge, accounting, restoration, and disgorgement of profits or other financial benefits.

61. **Typicality**. Plaintiff's claims are typical because she participated in the Plan, was treated as a tobacco user, and paid the challenged surcharge through payroll deductions. Her pay statements reflect the same standardized surcharge mechanism challenged on behalf of the Class. Plaintiff advances the same legal theories and seeks relief based on common Plan communications and centralized administrative practices.

62. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the Class. She suffered the same type of economic injury resulting from the same tobacco-based differential and fiduciary conduct challenged for the Class. Plaintiff has retained counsel experienced in ERISA and class-action litigation and has no interests antagonistic to the Class.

63. Class treatment will permit the Court to resolve the legality of Defendants' uniform program terms, standardized notices, reasonable-alternative practices, payroll administration, and fiduciary conduct in a single proceeding. Defendants acted or refused to act on grounds generally applicable to the Class, and common issues predominate over any individualized issue concerning the amount of each participant's surcharge deductions.

## CAUSES OF ACTION

## COUNT I

## UNLAWFUL PREMIUM DIFFERENTIAL – FAILURE TO PROVIDE A COMPLIANT REASONABLE ALTERNATIVE STANDARD AND THE FULL REWARD

(Violation of ERISA § 702, 29 U.S.C. § 1182(b), and PHSA § 2705, 42 U.S.C. § 300gg-4(j)(3)(C)–(D); 29 C.F.R. § 2590.702(f)(4)(iii)–(iv); 45 C.F.R. § 146.121(f)(4)(iii)–(iv))

64. Plaintiff re-alleges and incorporates by reference all preceding allegations of this Complaint, excluding the allegations of the other Counts.

65. ERISA prohibits group health plans from requiring participants to pay more for coverage based on a health-status-related factor. 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1). Mondelez's $100 monthly tobacco surcharge required affected employees to pay more for the same medical coverage based on tobacco use and therefore was unlawful unless Defendants satisfied every condition of the wellness-program exception.

66. Among those mandatory conditions, an outcome-based program must be reasonably designed to promote health and must make a reasonable alternative and the same, full reward available to all similarly situated individuals. 42 U.S.C. § 300gg-4(j)(3)(C)–(D); 29 C.F.R. § 2590.702(f)(4)(iii)–(iv).

67. The 2020 New Hire Guide tells tobacco users that they may use the Fuel4Life Tobacco Cessation Program to "avoid the surcharge," but it does not say that completion after the

start of the Plan year results in reimbursement or credit of surcharges already paid. The 2021 Annual Enrollment Guide repeats the $100 monthly surcharge without explaining any mechanism for receiving the full current-year reward.

68. Upon information and belief, Defendants administered the program so that participants who satisfied the cessation alternative after deductions began received only prospective relief or otherwise received less than the full annual value provided to participants who satisfied the tobacco-free standard from the beginning of the Plan year. That unequal treatment violates the uniform-availability and full reward requirements.

69. A program that permits Defendants to retain surcharges already collected after a participant has satisfied a compliant alternative does not make the same, full reward available. The Departments expressly required the retroactive portion of a premium reward to be provided, while allowing plans flexibility only as to the mechanics of how that amount is delivered. Final Regulations, 33163.

70. Because Defendants imposed the tobacco-based differential without making the full reward available through a compliant reasonable alternative to all similarly situated participants, they cannot invoke ERISA's wellness-program exception.

71. The resulting surcharge is an unlawful difference in the cost of coverage based on a health factor, in violation of 29 U.S.C. § 1182(b) and 42 U.S.C. § 300gg-4(b), as incorporated into ERISA and enforced through ERISA § 502(a)(3).

72. Plaintiff and Class Members seek appropriate equitable relief under 29 U.S.C. § 1132(a)(3), including restitution, equitable surcharge, disgorgement, an accounting, declaratory relief, and such other relief as is necessary to redress the violation and enforce ERISA.

## COUNT II

## UNLAWFUL PREMIUM DIFFERENTIAL – FAILURE TO PROVIDE REQUIRED NOTICE

## (Violation of 29 U.S.C. § 1182(b) and 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v))

73. Plaintiff re-alleges and incorporates by reference all preceding allegations of this Complaint, excluding the allegations of the other Counts.

74. Mondelez's tobacco surcharge required Plaintiff and Class Members to pay more for medical coverage based on tobacco-use status. That health-based differential is unlawful unless every condition of the statutory wellness program exception is satisfied.

75. One of those conditions is notice. Defendants were required to disclose the availability of a reasonable alternative standard or waiver in all Plan materials describing the terms of the outcome-based tobacco program. 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v).

76. The prescribed notice must identify the availability of a reasonable alternative or waiver, provide contact information for obtaining the alternative, and state that recommendations of a participant's personal physician will be accommodated. 29 C.F.R. § 2590.702(f)(4)(v).

77. The 2020 New Hire Guide describes the tobacco surcharge in concrete terms: $100 per month, applicable to employees who use tobacco products of any kind, a required tobacco-status certification during enrollment, and potential Plan and employment consequences for an inaccurate certification. 2020 New Hire Guide at 16. Those are the terms of the outcome-based program.

78. But the Guide does not disclose that a reasonable alternative or waiver is available to every affected participant and does not state that recommendations from the participant's

personal physician will be accommodated. Its direction to "learn more" about a free cessation program is not the notice ERISA requires.

79. The 2021 Annual Enrollment Guide independently violates the notice requirement. It tells employees only that tobacco users will pay an additional $100 monthly surcharge. 2021 Annual Enrollment Guide at 6. It contains no reasonable-alternative notice in that description, no waiver language, and no personal-physician accommodation statement.

80. Those omissions are particularly significant because the Guides are the materials through which Mondelez told participants what they would pay for medical coverage. The Departments explained that where wellness program compliance affects premiums or contributions, the availability of a reasonable alternative generally must be disclosed in the SPD and governing Plan documents as well. Final Regulations, 33166 n.24.

81. General contact information elsewhere in the Guides does not satisfy the regulation. A participant reading a warning that tobacco use will cost an additional $100 per month should not have to infer that a separate statutory alternative exists or guess that a general benefits line may provide one. The regulation requires the prescribed disclosure in the materials that describe the program's terms.

82. Because Defendants did not provide the prescribed reasonable-alternative notice in all Plan materials describing the tobacco surcharge, the wellness program exception is unavailable and the resulting health-based differential violates 29 U.S.C. § 1182(b) and 42 U.S.C. § 300gg-4(b).

83. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff and the Class seek appropriate equitable relief to redress the violation and enforce ERISA, including restitution,

disgorgement, equitable surcharge, an accounting, declaratory relief, and such other equitable relief as the Court deems just and proper.

## COUNT III

## BREACH OF FIDUCIARY DUTY (PLAN-LEVEL RELIEF)

## (Violation of ERISA §§ 404, 406 and 409, 29 U.S.C. §§ 1104, 1106 and 1109; Brought Under 29 U.S.C. § 1132(a)(2))

84. Plaintiff re-alleges and incorporates by reference all preceding allegations concerning Defendants' fiduciary status, administration of the surcharge, participant contributions generated by it, and the financial benefits obtained from those contributions.

85. Upon information and belief, the Administrative Committee is the Plan administrator and named fiduciary or otherwise possesses discretionary authority over administration of the Plan. Mondelez sponsored the Plan and acted as a fiduciary to the extent it exercised discretionary authority over Plan administration or authority or control over participant Plan assets.

86. The Administrative Committee exercised or was responsible for fiduciary authority over the administration of the tobacco surcharge, including enrollment and tobacco-status certification procedures, the reasonable-alternative process, participant communications, and the implementation of the surcharge through payroll. Those are fiduciary administrative functions, not merely settlor decisions concerning Plan design.

87. Mondelez likewise acted as a fiduciary with respect to participant contributions. Plaintiff's pay statement confirms that the tobacco surcharge was withheld from employee wages as a separate benefit-related deduction. Participant contributions become Plan assets as of the earliest date they can reasonably be segregated from the employer's general assets. 29 C.F.R. § 2510.3-102(a)(1), (c).

88. Upon information and belief, Mondelez appointed, retained, or possessed authority to remove members of the Administrative Committee. To that extent, Mondelez had a fiduciary duty to monitor the Committee's administration of the Plan, including the tobacco surcharge, participant communications, reasonable-alternative process, and treatment of participant Plan assets.

89. ERISA required Defendants, when acting in their fiduciary capacities, to act solely in the interests of participants and beneficiaries, with the care, skill, prudence, and diligence of prudent fiduciaries, and in accordance with the documents governing the Plan. 29 U.S.C. § 1104(a)(1). ERISA also prohibits fiduciaries from dealing with Plan assets in their own interest or using those assets for their own account. Id. § 1106(b)(1).

90. The conduct challenged here concerns Plan administration and control over Plan assets. Defendants implemented the circumstances under which employees were charged the higher contribution, controlled or approved the participant communications describing that charge, and exercised authority or control over the resulting payroll contributions.

91. The additional tobacco-based amounts withheld from participant wages became Plan assets under 29 C.F.R. § 2510.3-102. Once those amounts became Plan assets, fiduciary duties attached to their possession and use. Defendants could not use participant Plan assets to benefit Mondelez or reduce its own expenses except in accordance with ERISA.

92. The Plan's financial structure created a direct opportunity for self-dealing. The 2021 Annual Enrollment Guide states that the Company pays the majority of the cost of employee medical coverage, and public federal litigation describes the same Plan as self-funded. Additional participant contributions therefore displaced or reduced corporate funding that Mondelez otherwise would have supplied to pay Plan costs.

93. Mondelez thus obtained a direct economic benefit from the increased participant contributions generated by the tobacco surcharge. For each additional dollar of Plan cost paid from participant wages, Mondelez retained a dollar or corresponding amount of corporate cash it otherwise would have needed to devote to the Plan.

94. Upon information and belief, Mondelez also obtained the possession, use, and time value of participant funds while those amounts remained in its general-asset funding structure or other employer-controlled accounts. The resulting benefits include avoided expenditures, retained cash, float, investment return, interest, and other financial gains.

95. Defendants also breached their fiduciary duties in administering and communicating the tobacco surcharge. The 2020 and 2021 Guides imposed or described the $100 monthly charge but omitted the reasonable-alternative and personal-physician disclosures required by ERISA. Upon information and belief, the Administrative Committee controlled, approved, reviewed, or was responsible for those communications yet permitted the higher contributions to continue.

96. To the extent Defendants contend that participants had access to full reimbursement, individualized alternatives, physician-directed accommodations, waivers, or other rights not disclosed in the Guides, the Administrative Committee failed to administer and communicate those rights prudently. A fiduciary cannot prudently allow employees to pay higher contributions while leaving the means of obtaining statutory alternatives undisclosed or inadequately explained.

97. Upon information and belief, Defendants further failed to conduct a prudent periodic review of the tobacco surcharge, the cessation and reasonable-alternative process, participant communications, payroll deductions, and the manner in which participant contributions

were held and used. Those failures allowed increased participant payments and the corresponding corporate savings to continue.

98. Mondelez separately breached its fiduciary duties by failing to prudently monitor the Administrative Committee and any other delegates responsible for the challenged functions. Mondelez knew or should have known that the surcharge increased participant contributions to a self-funded Plan and that the participant-facing materials omitted information required by ERISA.

99. Mondelez's failure to monitor was particularly significant because Mondelez financially benefited from the conduct it was obligated to oversee. The more participants paid through the tobacco surcharge, the less corporate money Mondelez needed to contribute to finance the same Plan costs, and Mondelez retained the corresponding corporate cash.

100. These acts violated ERISA's duties of loyalty and prudence. Defendants administered the tobacco surcharge and exercised authority or control over participant contributions in a manner that benefited Mondelez while failing to provide participants the information necessary to understand and exercise their rights under the Plan. 29 U.S.C. § 1104(a)(1).

101. The challenged conduct also constituted prohibited transactions. Mondelez is a party in interest as the employer and Plan sponsor. 29 U.S.C. § 1002(14). Upon information and belief, Plan assets were caused to be used for the benefit of Mondelez in violation of ERISA § 406(a)(1)(D), and fiduciaries dealt with Plan assets in Mondelez's interest or for its account in violation of ERISA § 406(b)(1). 29 U.S.C. § 1106(a)(1)(D), (b)(1).

102. ERISA does not permit Defendants to retain that gain merely because the Plan ultimately had sufficient resources to pay claims. Section 409 separately makes a breaching fiduciary liable to make good losses to the Plan and to restore profits made through the use of Plan

assets. 29 U.S.C. § 1109(a). The fiduciary's use of the Plan's mechanics and assets to generate a profit for itself is an independent Plan injury and does not require proof of a matching balance-sheet loss.

103. As a result of these breaches, Mondelez obtained profits or other financial benefits by increasing the amount financed from participant wages, reducing corporate funds otherwise required to finance Plan coverage, and retaining the possession and use of those funds. The amount of avoided expenditures, retained cash, float, interest, investment returns, and other benefits can be determined through an accounting and discovery.

104. Defendants maintain or control the records necessary to determine that gain, including tobacco-status certifications, participant communications, cessation-program records, payroll records showing surcharge deductions, records showing where participant contributions were deposited and held, Plan claims and administrative-expense records, and records showing corporate funding supplied for medical coverage.

105. Plaintiff is authorized to bring this claim in a representative capacity on behalf of the Plan under 29 U.S.C. § 1132(a)(2). Under 29 U.S.C. § 1109(a), a breaching fiduciary is personally liable to restore losses and profits made through the use of Plan assets and is subject to other equitable or remedial relief. Plaintiff therefore seeks restoration, disgorgement, an accounting, removal or replacement of fiduciaries if appropriate, and all other Plan-wide relief authorized by §§ 1109 and 1132(a)(2).

## COUNT IV

## BREACH OF FIDUCIARY DUTY (INDIVIDUAL RELIEF)

## (Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106; Brought Under 29 U.S.C. § 1132(a)(3))

106. Plaintiff re-alleges and incorporates by reference all preceding allegations concerning Defendants' fiduciary status, administration of the tobacco surcharge, participant communications and contributions, Mondelez's financial benefit, and the failure to prudently monitor the program.

107. The Administrative Committee was, upon information and belief, the Plan administrator or fiduciary responsible for administering the Plan and controlling, approving, or directing participant communications concerning the tobacco surcharge and reasonable-alternative process. Mondelez likewise acted as a fiduciary to the extent it exercised authority over Plan administration or participant Plan assets and had responsibility to monitor the Committee.

108. Defendants breached their duties of loyalty and prudence by administering and communicating the tobacco surcharge in a manner that caused Plaintiff to pay more for Plan coverage without receiving the information ERISA required concerning the reasonable alternative, full reward, and personal-physician accommodation right.

109. To the extent Defendants contend that Plaintiff could have obtained an individualized alternative, physician-directed accommodation, waiver, full retroactive reimbursement, or other relief through a process not disclosed in the available participant-facing materials, Defendants failed to administer and communicate those rights prudently. Plaintiff was not adequately told how to invoke such a process or that physician recommendations would be accommodated.

110. Mondelez also failed to prudently monitor the Administrative Committee and any other delegates. Upon information and belief, Mondelez knew or should have known that the standardized benefits materials described a tobacco-based premium differential but omitted material information required by ERISA, and that the differential generated additional participant contributions that financially benefited Mondelez.

111. Those failures directly injured Plaintiff. Her pay statement reflects a $25 tobacco-surcharge deduction from her wages. She paid more for medical coverage than a similarly situated employee satisfying the tobacco-free standard and lost the possession and use of the amounts withheld from her compensation.

112. Mondelez obtained the corresponding financial benefit. The Plan was self-funded and the Company paid the majority of employee medical coverage costs. Upon information and belief, additional tobacco-surcharge contributions were held and used within the Plan's general funding structure to finance costs that otherwise would have required additional corporate funding.

113. Plaintiff therefore suffered the loss of possession and use of her money while Mondelez obtained corresponding avoided expenditures, retained cash, use of participant funds, float, investment returns, or other financial benefits. The amount and disposition of those gains are within Defendants' possession and can be determined through an accounting.

114. Mondelez's financial interest made its monitoring failures particularly significant. Each additional participant contribution reduced, dollar for dollar or otherwise correspondingly, the amount of corporate funds needed to finance Plan coverage. Mondelez therefore benefited from the same administrative failures it was obligated to monitor and correct.

115. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff and the Class seek appropriate equitable relief necessary to redress these fiduciary breaches and enforce ERISA,

including restitution, equitable surcharge, disgorgement, an accounting for profits, a constructive trust or equitable lien over traceable funds or profits where appropriate, declaratory relief, and such other equitable relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

A. An Order certifying this action as a class under Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class representative, and appointing the undersigned as Class Counsel;

B. A declaratory judgment that Defendants' tobacco-based premium differential violates ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C. Appropriate equitable relief requiring Defendants to reimburse, restore, or credit Plaintiff and Class Members for amounts by which they paid more for medical coverage under a tobacco-based differential that did not satisfy the conditions of ERISA's wellness-program exception;

D. A declaratory judgment that Defendants breached their fiduciary duties and engaged in prohibited transactions by administering the tobacco surcharge and participant contributions for Mondelez's own financial benefit, failing to provide the prescribed reasonable-alternative notice and full reward, and failing to prudently monitor the program and its payroll administration;

E. An Order requiring Defendants to provide an accounting of tobacco-surcharge deductions, participant contributions attributable to the tobacco differential, refunds

or credits provided, the disposition of those funds, and profits or other financial benefits obtained from the challenged practices;

F. Appropriate declaratory and injunctive relief, to the extent available, requiring correction of noncompliant program terms and participant communications and barring continued administration of the tobacco surcharge in violation of ERISA;

G. Disgorgement of any profits, avoided expenditures, float, investment returns, interest, or other financial benefits Mondelez received or enjoyed through the challenged tobacco-surcharge practices and fiduciary breaches;

H. Equitable restitution of traceable amounts and proceeds, including a constructive trust or equitable lien where appropriate;

I. Equitable surcharge against the responsible fiduciaries for losses caused by fiduciary breaches or unjust enrichment redressable through that remedy;

J. Relief to the Plan under 29 U.S.C. §§ 1109 and 1132(a)(2), including restoration of losses and profits made through the use of Plan assets, an accounting, removal or replacement of fiduciaries if appropriate, and all other equitable or remedial relief the Court deems appropriate;

K. An award of pre-judgment interest on amounts awarded, as permitted by law;

L. An award of Plaintiff's reasonable attorneys' fees, expenses, and taxable costs under ERISA § 502(g), 29 U.S.C. § 1132(g), the common-fund doctrine where applicable, or other applicable authority; and

M. Any other relief the Court determines is just and proper, without duplicate recovery.

Dated: October 9, 2026

Respectfully submitted,

**SIRI & GLIMSTAD LLP**

By: /s/ *Mason A. Barney*
Mason A. Barney (#634142)
Oren Faircloth (pro hac vice forthcoming)
William H. Payne (pro hac vice forthcoming)
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (929) 677-5181
E: mbarney@sirillp.com
E: wpayne@sirillp.com
E: ofaircloth@sirillp.com